UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-80058-CR-ZLOCH

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                    **O R D E R**

ADAM G. McDANIEL, a/k/a
"GoDemon@hotmail.com," a/k/a
"Demonic Go,"

        Defendant.
_____/

THIS MATTER is before the Court sua sponte.  On October 6, 2006, the Court imposed a sentence upon Defendant Adam McDaniel falling above the advisory guideline range as determined under the United States Sentencing Guidelines Manual.  Cognizant that said sentence will be reviewed for reasonableness, see United States v. Owens, 464 F.3d 1252, 1254 (11th Cir. September 15, 2006), the Court enters this Order for the purpose of setting forth its reasoning in imposing the same.  The Court has carefully reviewed the entire court file herein and is otherwise fully advised in the premises.

I.  Background

In the above-styled cause, Plaintiff United States of America (hereinafter the "Government") filed a two count Indictment (DE 7) against Defendant Adam McDaniel, a/k/a "GoDemonic@hotmail.com," a/k/a "Demonic Go" (hereinafter "Defendant").  Specifically, the Indictment (DE 7) charges Defendant with persuading, enticing, or

inducing, by means of a facility of interstate commerce, a minor to engage in sexual conduct, in violation of 18 U.S.C. § 2422(b), and traveling in interstate commerce for the purpose of engaging in sexual conduct, as defined in 18 U.S.C. § 2246, with a minor, in violation of 18 U.S.C. § 2423(b).  On July 27, 2006, Defendant entered a plea of guilty to the charge contained in Count 2 of the Indictment.

The conduct underlying said charge, as articulated by the Government and agreed to by Defendant at the aforementioned change of plea hearing, is as follows.  See DE 56, pp. 11-15.  In 2004, Defendant, who lived in Texas, began communicating on the internet with the minor victim in the above-styled cause (hereinafter "C"), who lives in Florida.  When said communication began, Defendant was 19 years old, and C was 12 years old.  Defendant was aware of C's age, and had seen photographs of her from which it could be determined that C was a minor.[1]  In the subsequent months, Defendant and C began to communicate on the telephone and in letters, and their communications became romantic in nature. Further complicating the communications between Defendant and C was the fact that C had previously been raped as the result of another relationship commenced on the internet.  The only person C told about that rape was Defendant, and he remained the only person

---

[1] The Court viewed one of the photographs in question at the sentencing hearing, and notes that in it, C clearly appears to be a girl in her young teens.

knowledgeable of the event until after Defendant's arrest. Defendant eventually made plans to visit C in Florida.

In November 2005, C's father learned of Defendant's plans to travel to Florida. He contacted Defendant, reminded Defendant that C was, at the time, 14 years old, and told Defendant to leave his daughter alone. Although Defendant told C's father he intended to leave C alone, it was later determined that Defendant had already purchased his ticket to come to Florida.

On December 2, 2005, Defendant traveled by plane from Texas to Fort Lauderdale, Florida, and immediately contacted C. Defendant traveled in a taxi to C's school, where she was attending a basketball game. C was in ninth grade at the time. Defendant then took C to a hotel, where the two engaged in sexual acts, as defined in 18 U.S.C. § 2246. After having been contacted by C's parents, and with assistance from friends of Defendant and C, officers from the Boca Raton Police Department discovered Defendant and C at the hotel at approximately noon on December 3, 2005. It was then learned that Defendant had traveled from Texas with condoms and K-Y Jelly, and that he did not plan to return to Texas until December 5, 2005. Defendant and C gave matching statements to the police as to what had occurred between them while at the hotel.

At sentencing in the above-styled cause, after hearing and disposing of the parties' Objections, the Court determined that the appropriate advisory sentencing guideline range was 57 to 71

months, and that the supervised release range was from three years to life.   Upon proceeding to allocution, counsel for Defendant argued that a sentence within the guideline range would be inordinately severe based upon the facts in the above-styled cause. First, Defendant's counsel argued that this case did not represent the typical situation of a sexual predator.   The relationship between Defendant and C, he argued, began as a friendship, turned romantic over an extended period of time, and only became sexual in nature 18 months after it began, with both participants believing themselves to be in love with the other.   Defendant's counsel further argued that Defendant's psychological disposition contributed to his conduct, in that he is shy and immature for his age, and that he would benefit from more social interaction not involving computers.   Notwithstanding said immaturity, counsel for Defendant pointed out that Defendant had always performed well in school, and had a successful family that supported him.

In addition to the aforementioned arguments, Defense counsel also offered explanations for two of the more detrimental factors that had been discussed during the course of the hearing.   First, regarding Defendant's disobedience to C's father in coming to Florida, Defense counsel admitted that Defendant should not have engaged in such disobedience, but that he did it "for the same reason dumb kids frequently disobey their own parents or other people's parents."   DE 57, p. 15.   While no further explanation was

given, the Court notes that Defense counsel was essentially arguing that disobedience to parental directives is hardly uncommon among young people.

Second, during the course of the sentencing hearing, the Court was informed that Defendant had been in contact with C while incarcerated at the Federal Detention Center in Miami, Florida during the pendency of the above-styled cause.  The Court notes that a Florida state court judge had previously prohibited Defendant from having any further contact with C.[2]  <u>See</u> DE 31, p. 8-9.  The questionable status of the prohibition imposed by the state court judge notwithstanding, Defendant's counsel stated to the Court that he had informed Defendant that he was to have no contact with C, and that he relayed that message in a manner that would not be misunderstood.  Defense counsel further articulated the nature of Defendant's contact with C.  Said contact, he stated, had been in response to a letter C sent Defendant while he was incarcerated.  It was after learning of Defendant's response to C that his counsel admonished him to have no further contact with C, and to turn over to him any further correspondence from C.  C, in fact, contacted Defendant again by letter, and Defendant's counsel stated that Defendant provided the letter to him, and did not

_____

[2] The Court further notes, however, that the state charges had been dismissed in deference to the federal prosecution of Defendant, and that the status of said prohibition at the time Defendant contacted C is unclear.

respond to C.  See DE 57, pp. 19-20.

The Government did not believe the sentencing options reflected by the Guidelines to be overly harsh, and argued for a sentence at the low end of the guideline range.  In so arguing, the Government highlighted C's young age, the fact that C's father told Defendant to stay away from his daughter, which directive Defendant ignored, and the fact that actual sexual conduct had occurred. Additionally, the Government indicated that Defendant would benefit from psychological treatment, citing the same report referenced by Defendant that stated that Defendant became "involved in these problems" because of his shyness.  See DE 57, p. 31.

In addition to the Government and Defendant, the Court also heard a statement from C's mother.  She detailed the emotional and psychological damage done to her daughter by the events described herein, as well as the long road to recovery she believes her daughter has ahead of her.  C's mother further described Defendant's failure to cease contact with C after the events of December 2, 2005, and articulated her belief that Defendant manipulated C into feeling responsibility for the legal consequences being visited upon him.  See DE 57, p. 25-26. Finally, C's mother stated that although she did not originally believe that Defendant was an internet sexual predator, she eventually came to believe he was so.  This shift in opinion arose particularly from C's mother's belief that Defendant had prepared

6

C for sexual activity by recommending to her that she watch movies rated beyond her years, as well as describing to C sexual activity he had engaged in with another underage girl.  <u>See</u> DE 57, p. 27.

By the conclusion of allocution, the Court had become concerned with the passing references to sexual contact between Defendant and other minors made not only at sentencing, but elsewhere in the record.  <u>See, e.g.,</u> DE Nos. 26, p. 1, 30, p. 3, and 31, p. 9.  The Court therefore inquired about the same, and includes the Government's response here in full, first, because it contributed significantly to the Court's reasoning in imposing sentence.  Second, the following facts provided by the Government were provided only in response to the Court's inquiry at sentencing.  They are not included in full in any other pleading, were not provided to the United States Probation Officer who prepared the Presentence Investigation Report dated September 1, 2006, and were otherwise absent from the argument of both the Government and Defendant at sentencing.  The Court is at a total loss as to why the Office of the United States Attorney for the Southern District of Florida, as well as the Assistant United States Attorney assigned to the above-styled cause, found it appropriate to intentionally withhold the following information from the Court.

> THE COURT: . . . There has been some reference to another incident with a minor girl.  What do you know about that, if anything?

> MS. VILLAFANA: You Honor, there are two other minor girls that have been –
>
> THE COURT: You mean in addition to the victim in this case?
>
> MS. VILLAFANA: Yes, your honor.
>
> THE COURT: Go ahead.
>
> MS. VILLAFANA: One was a girl who was 16 years old who met the Defendant via the internet when he was 19.  She traveled at his request from California to Texas, and they did engage in a sexual relationship that resulted in her getting pregnant.
>       There also was a 15 year old girl that the Defendant was developing a relationship with at the time of his arrest.  We don't know of any sexual behavior between the two of them.
>
> THE COURT: And the minor who became pregnant, what was the outcome of the baby?
>
> MS. VILLAFANA: She had an abortion.

DE 57, p. 32-33.  At this point being fully informed of the facts and circumstances surrounding Defendant's crime, the Court imposed a sentence above the advisory guideline range.  Specifically, the Court sentenced Defendant to a term of imprisonment of 120 months, to be followed by a term of supervision of ten years.  The Court now sets forth its reasoning for varying from the advisory guideline range.

## II.  <u>Analysis</u>

When determining the imposition of a particular sentence, a sentencing court is to consider

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

8

```
(2) the need for the sentence imposed –
(A) to reflect the seriousness of the offense, to promote
respect for the law, and to provide just punishment for
the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the
defendant; and
(D) to provide the defendant with needed educational or
vocational training, medical care, or other correctional
treatment in the most effective manner;

(3) the kinds of sentences available . . . .
```

18 U.S.C. § 3553(a)(1)-(3) (2006). "Although sentencing courts must be *guided* by these factors, nothing in [United States v. ] Booker[, 543 U.S. 220 (2005)] or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Valnor, 451 F.3d 744, 751 (11th Cir. 2006) (citing United States v. Thomas, 446 F.3d 1348, 1357 (11th Cir. 2006)). When a sentence is reviewed by an appellate court, "the party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in light of both that record and the factors in section 3553(a)." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). Furthermore, "[r]eview for reasonableness is deferential" and the reviewing court will "evaluate whether the sentence imposed by the district court fails to achieve the purposes of sentencing as stated in section 3553(a)." Id.

Turning the record before it, the Court notes that there were a number of facts that rendered a sentence within the advisory

guideline range an entirely inadequate sentence when considered in light of the factors set forth in § 3553(a). First the Court found that a higher sentence was necessary to reflect the seriousness of the Defendant's crime, and to promote a respect for the law because there were a series of events leading up to Defendant's commission of the crime in the above-styled cause, as well as after, that evidenced Defendant lack of respect for the law. First, before Defendant came to Florida, C's father reminded Defendant that she was underage, and told Defendant to stay away from her. While § 3553(a) does not require that the Court impose sentence as to promote respect for parental directives, the Court notes that Defendant's disregard of this particular directive factors into the imposition of Defendant's sentence because the statement of C's father accurately reflects the law of the land. Defendant was provided a warning of the trouble he was about to get into, and he squandered that warning, as well as disrespected the authority of C's father.

Furthermore, after state charges were filed, and the above-styled cause was initiated, Defendant continued to have contact with C. Defendant's insistence on contacting C, by the conduct charged in the above-styled cause and otherwise, not only evidenced Defendant's disrespect for the law, but contributed to the severity of his crime. As stated by C's mother at sentencing, the criminal conduct engaged in by Defendant, and his contacting C following his

arrest, have caused C considerable damage.  While C's mother articulated the progress C has made since the events described herein, she also detailed the regression caused by Defendant's failure to cease contact with her following his arrest.  The Court further notes that C's recovery from these events, whether from her exposure to movies beyond her years, to the sexual violation and continued contact engaged in by Defendant, to her involvement with the intensity of state and federal criminal proceedings, may very well amount to an undertaking that lasts for C's entire life. Because of the foregoing, the Court found that a sentence above the advisory range was necessary to promote respect for the law, and reflect the severity of Defendant's crime.

In addition to the above, the Court also found that a sentence above the advisory guideline range was necessary to afford an adequate deterrence to criminal conduct.  The Court notes that, like so many sexual crimes committed today, the charge to which Defendant pled guilty had its origin in use of the internet.  The Court notes that "cyberspace provides an increasingly common and effective medium by which would-be sexual predators can contact minors."  United States v. Robertson, 350 F.3d 1109, 1113 (10th Cir. 2003).  As Defense counsel stated to the Court at sentencing, the internet allows socially immature or insecure people to interact with others at a level of intimacy that would have been impossible prior to its widespread employment.  See DE 57, p. 17.

Defense counsel further argued, and the Court agrees, that this instrumentality is going to lead to more cases of the sort presented in the above-styled cause coming before the Court.

The Court notes, however, that the widespread use of the internet to engage minors, as well as the "opportunity," id., it provides to immature or reclusive individuals who would engage in such conduct to ultimately criminal ends, calls for heavier sentences providing greater deterrence, not lighter sentences providing judicial imprimatur to conduct the representatives of the people have continuously attempted to prohibit and discourage. See, e.g. Adam Walsh Child Protection And Safety Act, 42 U.S.C. § 16901, et seq.; Protection Of Children From Sexual Predators Act Of 1998, H.R. 3494, 105th Cong. (1998); The Sex Crimes Against Children Prevention Act Of 1995, H.R. 1240, 104th Cong. (1995). The Court notes that the culture may very well be at a point of divergence from the law, easing and even promoting certain practices constituting criminal conduct.  Certain attitudes and instrumentalities may exist in society that will make it easier for those wishing to engage in sexual conduct with minors to do so.  In the face of that cultural scenario, however, it is not the job of the Court to toss aside well established legal principles, particularly one as foundational and long standing as an age of consent, simply because the internet has made it easy for severely troubled individuals to sexually engage minors.  See Charles A.

12

Philips, <u>Children, Adults, Sex and the Criminal Law: In Search of Reason</u>, 22 Seton Hall Legis. J. 1, 16-17, 55-62 (1997) (discussing the history and uniformity of historical criminal prohibitions against sexual conduct with minors, and the various ages of consent in the United States today).

In addition to the aforementioned factors, the Court found that the sentence imposed in the above-styled cause was necessary to protect the public from further crimes of Defendant. While efforts were made to depict Defendant as a shy young man who had fallen in love, the facts of the case simply did not bear that interpretation. As stated by C's mother, Defendant's injurious influence on C began before the events of December 2 and 3, 2005 with his discussion of prior sexual conduct and recommendation of movies rated beyond C's years. As further stated by C's mother, following Defendant's arrest, he continued conduct injurious to C by making her feel responsible for his legal troubles, as well as continuing to contact C. Furthermore, the Court notes that C appears to have been second in a chain of three girls with whom Defendant was engaging in this type of conduct. As stated by the Government, the first minor with whom Defendant had contact was a 16 year old girl from California. Upon their meeting, the two engaged in sexual activity, the girl became pregnant, and she

subsequently obtained an abortion.[3]  Defendant was 19 at the time of this meeting, so this first relationship coincided generally with the time period in which Defendant commenced his "love affair" with C.  Defendant eventually met, and engaged in sexual conduct with C.  While Defendant pointed out that sexual intercourse did not occur, the Court notes that substantial and criminal sexual conduct did occur, and there were still approximately two days left of Defendant's visit to Florida.  Finally, as indicated by the Government, at the time of Defendant's trip to Florida, he was already in the early stages of a relationship with another girl who was 15 years old.  While the Government stated that it was not aware of any sexual activity between Defendant and this third minor, the Court notes that they apparently had not met yet.  The Court further notes, however, that Defendant's history indicates a probability that this relationship, too, would have turned sexual upon such a meeting.  The Court found that this was not the conduct

---

[3] When faced with facts as troubling as these, the Court cannot help but call to mind the Supreme Court's discussion of reliance on the availability of abortion in "social development."  See Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, 856 (1992) ("[F]or two decades of economic and social development, people have organized intimate relationships and made choices that define their views of themselves and their places in society, in reliance on the availability of abortion in the event that contraception should fail.").  Defendant, and the underage girls with whom he developed the relationships described above, have lived their entire lives after the Supreme Court's decision in Roe v. Wade, 410 U.S. 113 (1973), and the conduct described in this Order exposes a facet of the dark underbelly of conducting social development, and organizing intimate relationships, based on the availability of abortion.

of a shy young man in love, but that of a criminal predator.  For that reason, the Court found the sentence imposed was necessary to protect society.

Finally, both Defendant and the Government represented that there is a psychological factor to Defendant's behavior.  To the extent that a psychological condition contributed to conduct such as that described above, the Court notes that said condition must be severe indeed.  The Court therefore found that said severity would provide all the more reason for a longer term of imprisonment in order to protect society because of the difficultly in overcoming such a problem.  Additionally, a longer term of imprisonment may provide Defendant the opportunity he needs to receive psychological treatment for the problems represented at his sentencing hearing.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this ____16th____ day of January, 2007.

WILLIAM J. ZLOCH
Chief United States District Judge

Copies furnished:

R. Alexander Acosta, Esq.
United States Attorney for the
Southern District of Florida

Ann Marie C. Villafana, Esq., AUSA
For Plaintiff

Patrick M. Hunt, Esq., AFPD
Robin F. Farnsworth, Esq., AFPD
For Defendant